# SUPREME COURT

### OF THE

## STATE OF NEVADA,

## JANUARY TERM, 1870.

---

5   341
7   395

## THE VIRGINIA AND TRUCKEE RAILROAD COMPANY v. THE BOARD OF COUNTY COMMISSIONERS OF ORMSBY COUNTY.

EQUALIZATION OF TAXES BY COUNTY COMMISSIONERS.  Where a Supplementary Revenue Act (Stats. 1867, 111) provided, that in cases where the County Assessor neglected to make an assessment, the County Treasurer, as *ex officio* tax receiver, should specially assess and collect the taxes; and that if any person felt aggrieved by such subsequent assessment he might apply to have it equalized by the County Commissioners, and that they should determine the matter: *Held*, that the Board of County Commissioners, while sitting to equalize such assessment, was not controlled by the restrictions imposed upon the Board of Equalization sitting under the General Revenue Act; and that it could not, like the Board of Equalization, refuse to equalize an assessment because a sworn statement had been refused on demand of the Treasurer.

CONSTRUCTION OF REVENUE STATUTES AS IN PARI MATERIA.  Different Revenue Acts should, as far as possible, be construed as one Act; but the later one must control, if there be any conflict or inconsistency.

SUPPLEMENTARY REVENUE ACT OF 1867.  The Supplementary Revenue Act of 1867, (Stats. 1867, 111) providing for assessments by the tax receiver, where the Assessor had made omissions, etc., was intended to authorize summary proceedings; but it gives to all persons so assessed, without conditions, a right to have their assessments equalized by the County Commissioners.

The Virginia and Truckee Railroad Co. *v.* Commissioners of Ormsby County.

DIFFERENCE BETWEEN EQUALIZING BOARD OF COUNTY COMMISSIONERS AND BOARD OF EQUALIZATION. The Board of County Commissioners, sitting to equalize assessments for taxes made by the tax receiver under the Supplementary Revenue Act of 1867, is entirely distinct from the Board of Equalization provided for by the General Revenue Laws, though composed of the same persons.

STATUTES RELATING TO DIFFERENT OFFICERS HAVING SIMILAR DUTIES. There is no rule of construction which will authorize the application of provisions contained in any law respecting a certain officer or body, to another and different officer or body, although the laws be *in pari materia*, and the duties imposed upon such officers be similar in character.

DUTY OF COUNTY COMMISSIONERS TO EQUALIZE ALL "SUBSEQUENT ASSESSMENTS." Under the Supplementary Revenue Act of 1867, providing for subsequent assessments in cases where the regular assessments by the Assessor are omitted, the right is expressly given to all persons without exception so assessed, to have their assessments equalized upon making application within the proper time to the Board of County Commissioners; and if the Board refuse to act, it may be compelled to do so by mandamus.

THIS was an original application in the Supreme Court for the writ of mandamus, to compel the Board of County Commissioners of Ormsby County to hear and determine the application of the Virginia and Truckee Railroad Company for equalization of assessments, made under the Supplementary Revenue Act of 1867. (Stats. 1867, 111.) It appears that the company was assessed for ten miles of railroad, in Ormsby County, one hundred and fifty thousand dollars, and for rolling stock eleven thousand dollars; whereas, according to the affidavit of H. M. Yerington, General Superintendent of the company, filed for the purposes of this application, the real value of the property did not exceed sixty-seven thousand and one hundred and fifty dollars.

After the following decision, a petition for rehearing was made and denied. There being no briefs of counsel on file, the following abstracts from the petition on rehearing are given, to indicate the character of the argument on behalf of the Board of County Commissioners.

*Thomas Wells*, District Attorney of Ormsby County, for Respondent, on petition for rehearing:

I. What do we understand by the term "Supplemental?" Certainly, not that it is an Act which takes from, or cripples

the original Act; but that it adds to it, gives it broader scope and greater vigor, and supplies some grave omission, or cures some serious defect. If the construction put upon the Act in question is correct, it takes from and cripples the Act to which it is, by well known rules of construction and force of language, an addition; and therefore, of necessity, in part repeals it. This is never the construction given to a Supplemental Act, unless expressed, or so clearly deducible from the language used that any other construction would render the provisions of one or the other Act nugatory, because of direct conflict.

Does the Supplemental Act of 1867, in terms, repeal any part of the General Revenue Act? Certainly not. Does it do so in effect, or by necessary implication? It has long been laid down as the true rule, " That a general statute, without negative words, will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent." (Sedgwick on Stat. and Const. Law, 123.) The reason and philosophy of which rule is thus given: " That when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original Act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter Act such a construction, in order that its words shall have any meaning at all." Judged by the above rule, the Supplemental Act of 1867 does not in effect, or by necessary implication, repeal any part of section fifteen of the General Revenue Act, as amended in 1866.

The General Revenue Act provides that such parties as fail to give statements, on proper demand, shall be debarred of equalization. The Supplemental Act of 1867 provides, that " any person feeling aggrieved by any such assessment, (supplemental) may appear before the Board of County Commissioners and apply to have such assessment equalized, modified, or discharged." It seems to us in the light of the rule and illustrations given by Mr. Sedgwick, as above cited, that the provision of the Supplemental Act in question, that " any person feeling aggrieved, etc., may apply to the Board," etc., means *any person* who under the former

Act has such. right, etc.   This construction would give force and effect to both Acts, and result in a just and equable operation alike on all parties of the wise and salutary provision in question of the General Revenue Act.

II.    The purview of the Act of 1867 is, to provide for the assessment by the Treasurer as tax receiver, of such persons and property as may have been overlooked or neglected by the Assessor, while he had the legal right to assess, and such persons and property as may have come or been brought into any county after the Assessor's duty ceased.    Why would the Legislature, in such an Act, make such a distinction, in regard to what may justly be termed a very important right and a very severe penalty ?    Certainly not because of the summary character of the proceedings in operating under the Supplemental Act, for that characteristic is fully and fairly accounted for by reason of the shortness of the whole time. in which the assessments must be made.    Again :· is it fair to presume that the shortness of the time given should so operate as to give a privilege not given by the General Revenue Act, and to take away a penalty therein imposed ?.   Would not such a construction guarantee to any one the benefit of his own wrong, who might happen to elude the vigilance of the Assessor, but be caught by the Treasurer ?

III.    It seems to us that the Legislature used the terms " Board of County Commmissioners " and " Board of Equalization " in said Act as synonymous and convertible terms ; for in the second section of the Act the following language is used, which must be unmeaning and inoperative, if the two terms are not convertible :  " If any change is made in such assessment by the Board of Equalization, the Clerk thereof shall certify to the County Auditor such change." Who is to equalize under the Act ?    If the Board of County Commissioners, how is any change in an assessment to be certified to the Auditor ?    The Act says it must be certified to by the Clerk of the Board of Equalization.    If, therefore, only the Board of Commissioners act, the change cannot be certified at all to the Auditor, *ergo* the change is ineffectual.

IV.    Again :  Does the Board of Equalization become *functus*

*officio* in October? Had the Legislature provided, *in hæc verba*, that it should so become defunct, it would have transcended its authority under article four, section twenty-six, of the Constitution. But we cannot see that it does so provide. The provision of law is (Stats. 1866, 169, Sec. 15): "*provided, however*, that they shall not sit after the first Monday in October." This does not say, or by necessary implication mean, that the Board shall die an official death on the first Monday in October, but simply that it shall by that time have completed all the work of equalizing the general assessments for the fiscal year. And why? Because it is necessary, in order to collect, within the time required, the taxes so assessed and equalized. Again, if the Board cease, per force of law, to exist on the first Monday in October, why by the same may it not be resurrected, for it is the creature of the statute; and if by the statute it is slain, by the statute it may be raised to life again? Can we impute to the Legislature the weakness of using the language of section two already referred to, if the Board of Equalization, of which it there speaks, is defunct on and after the first Monday in October, until some secret influence or agency galvanize it into life for the operations of the next fiscal year? Could it recognize as sound, the position that a defunct Board could have a living and acting Clerk, unless the law had so specially and plainly provided? (See 8 Cal. 376; 7 Cal. 400; 28 Cal. 254; 18 Cal. 438; 4 Mass. 305; 9 Pick. 87; Smith's Commentaries, 897, 906.)

By the Court, LEWIS, C. J.:

Section one of an Act entitled "An Act supplementary to an Act to provide Revenue for the Support of the Government of the State of Nevada," and other Acts amendatory and supplementary thereto, (Laws 1867, 111) declares, that "the County Treasurers of the respective counties of this State, in their capacity of *ex officio* tax receivers, are hereby authorized and empowered, and it is made their duty, between the third Monday in October and the third Monday of December of each year, to specially assess all persons and property for taxation; and collect the taxes so assessed, in all cases where the County Assessor has neglected or omitted, from any cause, to make the assessment on any person or property in

the county, or where any person or property has, since the closing of the assessment roll, come into the county : *provided*, any person feeling aggrieved by any such assessment, may appear before the Board of County Commissioners, and apply to have such assessment equalized, modified, or discharged ; and the Board of Commissioners shall hold a general or special session to hear and finally determine the matter." By authority of, and in accordance with, the provisions of this law, the Treasurer of the County of Ormsby assessed the property of the plaintiff in that county. The plaintiff, for some reason or other feeling aggrieved by the assessment, applied to the Commissioners to equalize it. They refusing to act, a peremptory writ of mandamus is sought to compel action respecting the matter. As a defense and justification of the refusal by the Board of Commissioners it is argued, that as a demand was made upon the proper agent of the plaintiff for a statement of its taxable property within the County of Ormsby, and he having refused to comply, the Board has no authority to equalize. This position is taken upon the assumption that the provisions of the general revenue law, governing the general assessment, are to control the action of the officers in making this subsequent assessment; and that the Board of County Commissioners, when holding a session for the purpose of equalizing any assessment made by the Treasurer, is to be controlled by the same rules, and limited by the same restrictions, as the Board of Equalization when acting upon the general assessment. But this is a mistake. It is true, statutes of this kind should, as far as possible, be construed as one Act; but still the latter must control if there be any conflict or inconsistency.

Provisions of the original law, or of laws bearing upon the same subject must, if they can, be made to apply to the same subject matter and like circumstances in all. The rule can be carried no farther. Here, the general revenue law provides that the "Assessor shall demand from each person and firm, and from the president, cashier, treasurer, or managing agent, of such corporation, association, or company, including all banking institutions, associations, or firms, within his county, a statement, under oath or affirmation, of all real estate or personal property within the county, owned, claimed by, or on deposit with, or in the possession or control of,

such person, firm, corporation, association, or company;" and then in the fifteenth section (Laws 1866, 169) it is declared that the Board of Equalization shall not reduce the assessment of any person who has refused to give the Assessor his list under oath, as required.    If these provisions are to govern the Treasurer and Board of County Commissioners in the subsequent assessment, clearly the writ in this case should be denied.    But it is quite evident it was not the intention that they should.    It is manifest from the context of the Act authorizing a subsequent assessment, that it was the purpose to make the proceedings under it summary—the tax becoming due and collectable immediately upon the assessment being made, except when an equalization may be claimed, and no demand, as in the case where the Assessor makes the assessment, seems to be contemplated or required.    If not, it certainly could not have been the intention to visit the consequences of a failure to make it upon those thus assessed by the Treasurer.

Again: The provisions respecting the reduction of the assessments of persons who have refused to make a statement, it will be observed, are in the form of a limitation upon the power of the Board of Equalization—it is declared the Board shall not reduce the assessment of such persons.    But the Board of Equalization ceased to exist in October, and the Board of County Commissioners is authorized to equalize all subsequent assessments.    Now, notwithstanding the two Boards are composed of the same persons, still they are entirely distinct, and very different bodies.    They are as completely different as if they were composed of different individuals.    Such being the case, can it be said that the limitations which the general revenue law places upon the authority of the Board of Equalization are to be extended to an entirely different body—the Board of County Commissioners?    The answer would certainly be in the negative, independent of any express provision of law relieving them from restrictions imposed upon the Board of Equalization.    There is no rule of construction which will authorize the application of provisions contained in one law respecting a certain officer or body, to another and different officer or body mentioned in another law—although the laws be *in pari materia*, and the duties imposed upon such officers be similar in character.    If,

The Virginia and Truckee Railroad Co. *v.* Commissioners of Ormsby County.

then, this law authorizing the subsequent assessment made it the duty of the Board of Equalization to meet and equalize the subsequent assessment without in any wise extending or regulating their power, doubtless it would be held to be limited as in the general law.    Such, however, is not the case here.    It is not the Board of Equalization, but the Board of Commissioners that is authorized to equalize—which being a different and distinct body, with powers of its own, is not to be controlled by the provisions of the law regulating the authority and jurisdiction of the Board of Equalization.

However, we think the law authorizing the equalization of the subsequent assessment expressly exempts the Commissioners from the restrictions placed upon the other Board : for it declares, that *any person* feeling aggrieved may apply to the Board for relief; the expression "any person" including all persons.    Thus, the right is expressly given to all persons, without exception, to have their assessments equalized, upon making application to the Board.

By what authority can any exception be made to this right extended to all without limitation ?    Had it been the intention of the Legislature to except from the right, thus conferred, those who had refused to make a statement—as under the general law—it is fair to presume that the proper exception would have been expressly made.    By the plain letter of the law all persons, without exception, may have any subsequent assessment made upon them equalized, by making the application within the proper time.    And we do not feel authorized to make any exception.

The mandamus must therefore issue, commanding the Board of County Commissioners to act upon the application of the relator.

JOHNSON, J., did not participate in the foregoing decision.